IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRUSTED DATA SOLUTIONS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KOTCHEN & LOW, LLP. ) <br> ) <br> Defendant. ) | CIVIL ACTION FILE NUMBER <br> __1:14-CV-1419-TCB_____ |

## COMPLAINT

Plaintiff Trusted Data Solutions, LLC ("Plaintiff" or "TDS") files this Complaint, showing the Court as follows:

## PARTIES

1.

TDS is a limited liability company. All of TDS' members are citizens of New York. TDS was retained to perform e-discovery services for a case pending in this Court.

2.

Defendant Kotchen & Low, LLP is a limited liability partnership. Upon information and belief, all of Defendant's partners are citizens of Washington, D.C., Virginia, and/or Maryland. The two named partners of Defendant, Daniel A.

Kotchen and Daniel L. Low, and Defendant as a firm are lead class counsel in the case pending in this Court for which TDS was retained to provide e-discovery services.

## **JURISDICTION**

3.

There is complete diversity of citizenship between Plaintiff, who is a citizen of New York, and Defendant, who is a citizen of Washington, D.C., Virginia, and/or Maryland.

4.

The amount in controversy exceeds $75,000.

5.

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

6.

Defendant is subject to the personal jurisdiction of this Court pursuant to the Georgia Long Arm Statute, O.C.G.A. § 9-10-91(1), as it, through its partners and/or agents, has transacted business within Georgia, which transactions give rise to TDS' claims.

7.

Venue is proper in this Court because TDS seeks to recover fees and expenses incurred in performing e-discovery services in connection with a case pending in this Court.  28 U.S.C. § 1391(b)(2); LR 3.1B(3), NDGa.

## **FACTS**

8.

TDS is a leading expert in the field of backup tape restoration and data conversion.  Among other things, TDS can restore, index, and process every backup tape format that has been used commercially over the past 30 years.

9.

TDS also has extensive experience in email archive migration, which includes extracting email data from backup tapes, de-duplicating, and converting the data into an appropriate load file.

10.

The two named partners of Defendant, Daniel A. Kotchen and Daniel L. Low, filed suit in Georgia on behalf of two Georgia residents: <u>Brent Avery, et al. v. Delta Air Lines, Inc., et al.</u>, No. 1:09-CV-1391-TCB (N.D. Ga.) ("Underlying Suit").

11.

In order to file the suit, Messers. Kotchen and Low applied for, and were granted, permission to appear *pro hac vice* in this Court.

12.

After the suit was consolidated as part of a multi-district lawsuit, Messrs. Kotchen and Low and Defendant were appointed co-lead counsel in the case, which remains pending in this Court: <u>In re:</u> <u>Delta/Airtran Baggage Fee Antitrust Litigation</u>, No. 1:09-MD-2089-TCB (N.D. Ga.) ("Underlying Lawsuit").

13.

In the Underlying Lawsuit, Defendant hired Precision Discovery as its discovery expert.

14.

Upon information and belief, Defendant approved and authorized Precision Discovery to retain TDS to perform the tape restoration services in connection with the Underlying Lawsuit.

15.

When TDS was contacted by Precision Discovery, TDS was informed that Defendant was aware and approved of TDS' retention.

16.

TDS also was instructed to send all of its invoices to Defendant.

17.

Before performing any work in connection with the Underlying Lawsuit, TDS obtained approval for its proposed scope of work and proposed pricing.

18.

As instructed, TDS sent its invoices for its work in connection with the Underlying Lawsuit to Defendant.

19.

On April 26, 2013, TDS sent Invoice No. PREC2994 to Defendant. The invoice totaled $259,055.63, which reflected the pricing and work that had been requested and approved on Defendant's behalf. A true and complete copy of Invoice No. PREC2994 is attached as Exhibit A.

20.

Defendant never objected to TDS Invoice No. PREC2994, never notified TDS about any problems with the invoice, or notified TDS that the invoice should be sent or addressed to another entity.

21.

On June 28, 2013, TDS sent Invoice No. PREC3067 to Defendant. The

invoice totaled $5,905.82, which reflected the pricing and work that had been requested and approved on Defendant's behalf. A true and complete copy of Invoice No. PREC3067 is attached as Exhibit B.

22.

Defendant never objected to TDS Invoice No. PREC3067, never notified TDS about any problems with the invoice, or notified TDS that the invoice should be sent or addressed to another entity.

23.

TDS' invoices reflect TDS' standard pricing and actual costs incurred.

24.

As of the middle of July 2013, TDS had not received any payment for its work for Defendant in connection with the Underlying Lawsuit, despite submitting its first invoice on April 26, 2013 and its second invoice on June 28, 2013.

25.

TDS contacted Defendant and Precision Discovery multiple times between July and September 2013, inquiring about the status of payment. While Defendant never raised any objection to or concern with TDS' invoices, Defendant told TDS that one of the defendants from the Underlying Lawsuit was ultimately responsible

for payment of TDS' invoices and that this Court was holding a hearing on the issue of payment.

26.

On September 25, 2013, this Court issued a ruling in the Underlying Lawsuit on Defendant and Precision Discovery's request for payment of fees and expenses. (<u>See</u> Sept. 25, 2013 Order [Doc. 394], filed in Civil Action No. 1:09-md-02089-TCB.)  The Order, however, did not rule on TDS' outstanding invoices because, contrary to what had been represented to TDS, its invoices had not been submitted to the Court for consideration.  A true and complete copy of the Court's September 25, 2013 Order is attached as Exhibit C.

27.

Although the Court did not rule on TDS' outstanding invoices, it did address TDS in the Order.  For example, the Court noted that Defendant was aware that TDS had been retained to perform work in connection with the Underlying Lawsuit.  The Court also noted that Defendant assumed responsibility for Precision Discovery's decisions.

28.

On October 18, 2013, in response to another inquiry about payment, Mr. Low, a named partner with Defendant, sent a copy of the Court's September 25,

2013 Order to TDS.

29.

TDS learned for the first time – when it reviewed the Court's September 25, 2013 Order after receiving it from Mr. Low on October 18 – that its invoices had not been submitted to the Court for payment.

30.

After receiving the Court's September 25, 2013 Order on October 18, 2013, TDS made additional attempts to obtain payment for its outstanding invoices. TDS, however, continuously received the "run-around" with Defendant disclaiming any responsibility for payment.

31.

TDS was forced to retain the undersigned counsel to take appropriate steps to obtain payment for TDS.

32.

On January 3, 2014, TDS filed an Application for Payment of Fees and Expenses in the Underlying Lawsuit.  (See [Doc. 421] filed in Civil Action No. 1:09-md-02089-TCB.)  A true and complete copy of TDS' Application (without exhibits) is attached as Exhibit D.

33.

In its Application, TDS demonstrated that it was due $264,961.45 in fees and expenses reasonably incurred in performing work on Defendant's behalf in connection with the Underlying Lawsuit.

34.

Defendant (as well as other interested parties) filed a brief in response to TDS' Application.  (See, e.g., Defendant's Response to TDS' Application [Doc. 426] filed in Civil Action No. 1:09-md-02089-TCB.)

35.

Notably, none of the response briefs disputed that TDS was owed $264,961.45 or that TDS reasonably performed the work and incurred the fees and expenses reflected in its invoices.  Instead, Defendant merely denied that it was responsible for paying TDS' invoices.

36.

After all interested parties, including Defendant, fully briefed the issues, this Court entered an Order on March 6, 2014 regarding TDS' Application.  (See Mar. 6, 2014 Order [Doc. 442] filed in Civil Action No. 1:09-md-02089-TCB.)  A true and complete copy of this Court's March 6, 2014 Order is attached as Exhibit E.

37.

In its March 6 Order, this Court noted that none of the interested parties, including Defendant, "question[ed] the amounts charged by TDS for its work." The Court also noted that Defendant (and its discovery expert, Precision Discovery) "dragged TDS into the middle of th[e] [Underlying Lawsuit]."

38.

Consistent with its September 25, 2013 Order, the Court ordered that the defendant in the Underlying Lawsuit that had been sanctioned was responsible for one-half of TDS' outstanding fees and expenses.

39.

While the Court determined that it would not decide who – Defendant or Defendant's discovery expert, Precision Discovery – should pay the other half of TDS' outstanding fees and expenses, it explicitly noted that its decision "does not eliminate the possibility for TDS's full recovery." The Court also noted that its decision to require the defendant in the Underlying Lawsuit to pay only one-half of TDS' fees and expenses was "in no way an indication that TDS should not be fully compensated."

40.

Following the Court's March 6, 2014 ruling, the undersigned sent a demand letter to Defendant (and its discovery expert, Precision Discovery) on March 25, 2014, demanding that they immediately pay the amount due and owed: $132,480.72. The letter also explained that, because there was no dispute that TDS was due and owed $132,480.72 and that such amount was reasonable, Defendant's failure or refusal to resolve the matter would be in bad faith and would entitle TDS to interest, costs, and attorneys' fees. A true and complete copy of the March 25, 2014 Demand Letter is attached as Exhibit F.

41.

As of the filing of this Complaint, Defendant has never responded in any manner to the March 25, 2014 demand letter.

## COUNT I – BREACH OF CONTRACT

42.

TDS reasserts and realleges the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

43.

TDS had a valid and enforceable contract with Defendant to provide backup tape restoration services in connection with the Underlying Lawsuit.

44.

TDS performed its obligations in accordance with the terms and conditions of its contract with Defendant.

45.

Defendant has breached the contract with TDS by failing and refusing to pay TDS its reasonable fees and expenses incurred in performing services in connection with the Underlying Lawsuit.

46.

Defendant has admitted that TDS is due and owed its fees and expenses incurred in performing services in connection with the Underlying Lawsuit.

47.

Defendant's failure and/or refusal to pay the amounts due and owing constitutes a material breach of contract.

48.

TDS is entitled to damages from Defendant for Defendant's failure and/or refusal to pay TDS its fees and expenses as reflected in TDS' invoices.

## **COUNT II – OPEN ACCOUNT**

49.

TDS reasserts and realleges the allegations contained in Paragraphs 1

through 41 as if fully set forth herein.

50.

TDS performed services on Defendant's behalf in connection with the Underlying Lawsuit at the request of Defendant.

51.

Alternatively, TDS performed services on Defendant's behalf in connection with the Underlying Lawsuit at the request of Precision Discovery, who was authorized by Defendant to retain TDS and have TDS perform such services.

52.

TDS submitted its invoices for the work it performed on Defendant's behalf in connection with the Underlying Lawsuit to Defendant on April 26, 2013 and June 28, 2013.  (Exs. A and B.)

53.

Defendant has wrongfully failed and refused to pay the amounts due and owed to TDS as reflected in the invoices.  After accounting for the amounts paid by the defendant in the Underlying Lawsuit pursuant to this Court's March 6, 2014 Order, the outstanding principal balance is $132,480.72.

## **COUNT III – ACCOUNT STATED**

54.

TDS reasserts and realleges the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

55.

On April 26, 2013 and June 28, 2013, TDS sent invoices to Defendant for the fees and expenses incurred in performing services on Defendant's behalf in connection with the Underlying Lawsuits. (Exs. A and B.)

56.

Defendant never objected to TDS' invoices, never notified TDS about any problems with the invoices, or notified TDS that the invoices should be sent or addressed to another entity.

57.

Defendant has wrongfully failed or refused to pay the amounts due and owed to TDS as reflected in the invoices. After accounting for the amounts paid by the defendant in the Underlying Lawsuit pursuant to this Court's March 6, 2014 Order, the outstanding principal balance is $132,480.72.

## COUNT IV – QUANTUM MERUIT

58.

TDS reasserts and realleges the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

59.

TDS performed services on Defendant's behalf in connection with the Underlying Lawsuit at the request of Defendant.

60.

Alternatively, TDS performed services on Defendant's behalf in connection with the Underlying Lawsuit at the request of Precision Discovery, who was authorized by Defendant to retain TDS and have TDS perform such services.

61.

TDS' services conferred a substantial benefit upon Defendant.

62.

Defendant accepted said services with the knowledge that TDS expected to be paid the reasonable value thereof.

63.

Despite knowingly receiving and accepting the benefit of TDS' services, Defendant has wrongfully failed and refused to pay for the reasonable value

thereof.

64.

Defendant has been unjustly enriched and has unjustly benefitted from TDS' services in connection with the Underlying Lawsuit.

65.

It would be inequitable for Defendant to retain the value it received from TDS' services in connection with the Underlying Lawsuit without compensating TDS for the reasonable value of the services TDS performed on Defendant's behalf.

66.

Accordingly, Defendant is liable to TDS in an amount no less than $132,480.72, which represents the outstanding reasonable value of services performed by TDS on Defendant's behalf.

**COUNT V – UNJUST ENRICHMENT**

67.

TDS reasserts and realleges the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

68.

TDS has provided valuable services for, on behalf of, and at the request of

Defendant.

69.

TDS reasonably expected to paid for all services, labor, and materials at the time such services were performed on Defendant's behalf.

70.

Defendant has wrongfully failed and refused to pay for all such services performed by TDS and, therefore, has been unjustly enriched.

71.

TDS is entitled to recover from Defendant the reasonable value of the services performed on Defendant's behalf in an amount no less than $132,480.82, plus interest and costs.

**COUNT VI – ATTORNEY'S FEES, COSTS, AND INTEREST**

72.

TDS reasserts and realleges the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

73.

Defendant has acted in bad faith, has been stubbornly litigious, and has caused TDS unnecessary trouble and expense. As a result, pursuant to O.C.G.A. § 13-6-11, TDS is entitled to recover from Defendant its expenses of litigation,

including its reasonable attorney's fees.

74.

Pursuant to O.C.G.A. §§ 7-4-16 and 13-6-13, TDS is entitled to recover from Defendant prejudgment interest on the liquidated amounts past due at the rate of one and one-half percent (1 1/2%) per month.

75.

WHEREFORE, TDS prays that this Court:

(a) Enter a general verdict and judgment in favor of TDS and against Defendant on each count of this Complaint;

(b) Enter a general verdict and judgment in favor of TDS and against Defendant for TDS' expenses of litigation, including reasonable attorney's fees;

(c) Enter a general verdict and judgment in favor of TDS and against Defendant for prejudgment interest;

(d) Convene a jury to resolve all issues so triable; and

(e) Award other and further relief as is just and proper.

(Signature next page)

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Jonathan J. Kandel*
Neil L. Wilcove
Georgia Bar No. 658401
nwilcove@fmglaw.com
Jonathan J. Kandel
Georgia Bar No. 940584
jkandel@fmglaw.com

Attorneys for Plaintiff Trusted Data Solutions, LLC

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: (770) 818-0000
F: (770) 937-9960