IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRUSTED DATA SOLUTIONS, LLC, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | No. 1:14-cv-1419-TCB |
| KOTCHEN & LOW, LLP, | |
| Defendant. | |

## O R D E R

This case comes before the Court on Defendant Kotchen & Low,
LLP's motion to dismiss [8].

## I.    Factual Background

Plaintiff Trusted Data Solutions, LLC ("TDS") is a company that
assists its clients with electronic discovery ("e-discovery"), litigation
support, backup-tape restoration, data conversion, and records
management. Defendant Kotchen & Low ("K&L") is a law firm that
presently serves as the plaintiffs' interim co-lead counsel in *In re*

*Delta/AirTran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089-TCB (the "MDL action").[1]

The MDL action has been fraught with discovery disputes, and the particular dispute that ultimately gave rise to this case is described at length in the Court's September 25, 2013 Order in the MDL action [MDL action doc. 394].[2] Essentially, after Delta twice admitted that it mishandled e-discovery, the Court entered an Order [MDL action doc. 375] directing the MDL plaintiffs to hire a discovery expert—at Delta's expense—to investigate the e-discovery practices of Delta and its e-discovery vendors, eMag and Stratify. K&L hired Bruce Pixley with Precision Discovery, Inc. to serve as that expert. Pixley developed concerns about the quality and integrity of the work that had been done

---

[1] The MDL action consists of thirteen member cases, each of which is a purported class action alleging that Delta Air Lines and AirTran Airways violated federal antitrust laws by colluding to fix baggage fees.

[2] On a motion to dismiss, the Court may take judicial notice of filings in related cases before this Court. *Cash Inn of Dade, Inc. v. Metro. Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991); *Pharmerica, Inc. v. Healthprime, Inc.*, No. 1:07-cv-207-JEC, 2008 WL 779329, at *3 (N.D. Ga. Mar. 19, 2008) (taking judicial notice of order resolving discovery dispute in prior litigation). For purposes of this Order, the Court takes notice of the filings in the MDL action not to prove the truth of their contents, *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 n.15 (11th Cir. 1999), but only to explain the history and relationship between the parties in the instant case.

by Stratify and eMag. Rather than rely on their questionable work product, Precision retained TDS to essentially recreate what the vendors had done, significantly increasing the scope of work.[3] There is no written contract before the Court, but it is undisputed that it was Precision that made the contract with TDS. The dispute is whether it did so in its own capacity, as K&L argues, or on behalf of K&L, as TDS avers. [1], ¶ 14 (alleging that K&L "approved and authorized Precision Discovery to retain TDS.")

Among other services, TDS restored every Delta backup tape and extracted all of the data, which was more than 15,000 files.[4] The bulk of this work was conducted between November 2012 and May 2013. In April and June 2013, TDS sent two invoices to K&L, as it avers it was

---

[3] At the outset of Precision's retention, it intended to process fifty gigabytes of data at an estimated cost of approximately $20,000. Ultimately, Precision processed 9.5 terabytes—or 9,500 gigabytes—of data at a cost of almost $5 million, including $264,961.45 attributable to invoices submitted by TDS.

[4] The Court ruled that Delta was required to produce any and all documents requested by Pixley or TDS "without concern for responsiveness, relevance, privilege, etc." [MDL action doc. 376]. To assuage Delta's concerns about disclosing privileged or otherwise non-discoverable material to the MDL plaintiffs, the Court required TDS to "maintain all data it receives in this matter in the strictest confidence" and forbade TDS from "disclos[ing] or discuss[ing] the contents of any material it receives in this case with anyone other than Precision Discovery LLC or PricewaterhouseCoopers." [MDL action doc. 378].

instructed to do. Those invoices totaled $264,961.45. When payment

was not made promptly, TDS contacted K&L, which allegedly "told TDS

that one of the defendants [in the MDL action] was ultimately

responsible for payment of TDS' invoices and that this Court was

holding a hearing on the issue of payment." [1], ¶ 25. K&L never

objected to the invoices or instructed TDS to send its invoices elsewhere.

In September 2013, after a hearing in August, the Court entered

an Order on Precision's requested fees. [MDL action doc. 394]. The

Court expressly stated that the issue of TDS's fees was not before it for

consideration. *Id.* at pp.23-24 n.16. The Court found that Precision and

plaintiffs' counsel unnecessarily expanded the scope of the e-discovery

work by hiring TDS to recreate what Delta's vendors had already done.

It was clear to the Court that Delta shared blame—both for its prior

admitted errors in handling e-discovery and because of the problems

created by its vendors' lack of cooperation with Precision—but the Court

ruled that when plaintiffs' counsel rejected Delta's offers to address

Pixley's concerns in more economical ways, they "assumed

responsibility for Precision's decisions and cannot foist the

consequences of those decisions on Delta." *Id.* at 28. In the end, the Court found that "the fault [was] justly divided evenly" and required Delta to pay half of Precision's requested fees. It expressly withheld ruling on the charges incurred by TDS.

In January 2014, when payment had still not been made, TDS retained counsel and filed an application for payment of fees and expenses in the MDL action. [MDL action doc. 421]. In March, the Court ordered that Delta was required to pay half of TDS's requested fees [MDL action doc. 442], consistent with its previous order requiring Delta to pay half of Precision's fees. As to the remainder of TDS's fees, the Court observed that TDS should be fully compensated but expressly refused to "decide whether TDS's contractual relationship is with Precision or Plaintiffs' counsel and who is responsible for the balance of [TDS's] fees." *Id.* at pp.9-10.

After the Court's March 2014 Order was issued, TDS sent a letter to K&L demanding payment of the $132,480.72 balance and notifying K&L of its intention to seek attorneys' fees in the event of non-payment. In May, with no response from K&L to its demand letter, TDS initiated

5

the instant action. TDS asserts claims for breach of contract, open
account, account stated, quantum meruit, unjust enrichment, and
attorneys' fees and expenses. K&L has moved for dismissal of the
complaint in its entirety, arguing that it did not contract with TDS and
is therefore not responsible for its unpaid fees.

## II.    Legal Standard on a Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a
complaint provide "a short and plain statement of the claim showing
that the pleader is entitled to relief." *Chaparro v. Carnival Corp.*, 693
F.3d 1333, 1337 (11th Cir. 2012). This pleading standard does not
require "detailed factual allegations," but it does demand "more than an
unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*
Under Rule 12(b)(6), a claim will be dismissed for failure to state a
claim upon which relief can be granted if it does not plead "enough facts
to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 547 (2007). The Supreme Court has explained
this standard as follows:

> A claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the reasonable

> inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal

citation omitted). Thus, a claim will survive a motion to dismiss only if

the factual allegations in the pleading are "enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering a party's motion to dismiss under Rule 12(b)(6), the

allegations in the pleading must be accepted as true and construed in

the light most favorable to the pleader. *Powell v. Thomas*, 643 F.3d

1300, 1302 (11th Cir. 2011). But the Court need not accept as true

"labels and conclusions," "formulaic recitation[s] of the elements of a

cause of action," or legal conclusions couched as factual allegations.

*Iqbal*, 129 S. Ct. at 1949-50; *Chaparro*, 693 F.3d at 1337. Thus,

evaluation of a motion to dismiss requires two steps: (1) eliminate any

allegations in the pleading that are merely legal conclusions, and (2)

where there are well-pleaded factual allegations, "assume their veracity

and . . . determine whether they plausibly give rise to an entitlement to

relief." *Id.* at 1950.

7

## III.   Analysis

### A.   Choice of Law

Initially, the parties disagree as to which state's laws should govern this action. K&L argues for the application of New York law, while TDS contends Georgia law governs. Federal courts sitting in diversity must apply the forum state's choice-of-law principles. *Fed. Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006); *Acme Circus Operating Co. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir 1983). In Georgia, choice-of-law issues in contract cases "follow the doctrine of *lex loci contractus*: the law of the place where the contract is made." *Shorewood Packaging Corp. v. Commercial Union Ins. Co.*, 865 F. Supp. 1557, 1578 (N.D. Ga. 1994). "[T]he place where the contract is made is the place where the last act essential to the completion of the contract was done." *Id.*

But Georgia's choice-of-law rules limit the application of another jurisdiction's laws to "statutes and decisions construing those statutes." *Id.*; *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 678 (N.D.

Ga. 2003); *White v. Borders*, 123 S.E.2d 170 (Ga. Ct. App. 1961)).

Consequently, "[w]hen no statute is involved, Georgia courts apply the

common law as developed in Georgia rather than foreign case law."

*Frank Briscoe*, 713 F.2d at 1503; *see also Kirkpatrick v. J.C. Bradford &*

*Co.*, 827 F.2d 718, 725 n.6 (11th Cir. 1987) ("If a particular state does

not have a controlling statute, however, the Georgia choice of law rule

requires application of the common law as construed by the courts of

Georgia.").

The claims and defenses at issue in this case are exclusively

governed by state common law; TDS has not pled any statutory claims,

nor does K&L suggest that there is any New York statute on point.

Accordingly, even if the Court were to conclude that the contract was

"made" in New York, Georgia's choice-of-law rules would require

application of Georgia common law.[5] The Court will therefore proceed to

analyze the motion to dismiss by applying Georgia substantive law.

---

[5] Georgia's choice-of-law rules are subject to a public-policy exception, but that exception applies only when the foreign law and Georgia law are "sufficiently dissimilar" such that applying the foreign law would contravene the public policy espoused in Georgia law relevant to the case. *Bailey v. Cottrell, Inc.*, 721 S.E.2d 571, 574 (Ga. Ct. App. 2011). Here, K&L concedes that the relevant New York and Georgia laws are "substantially similar," making this exception inapplicable. [8-1],

## B.   Breach of Contract Claim

K&L asks the Court to dismiss TDS's claim for breach of contract, arguing that TDS has failed to plead facts showing the existence of a contract between TDS and K&L. Under Georgia law, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. A plaintiff claiming breach of contract bears the burden of pleading these elements, as well as breach and damages. *TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.*, 716 F. Supp. 2d 1275, 1285 (N.D. Ga. 2010); *Broughton v. Johnson*, 545 S.E.2d 370, 371 (Ga. Ct. App. 2001).

Although TDS avers in its complaint that it "had a valid and enforceable contract with [K&L]" to provide its e-discovery services, there appears to be no dispute that it was Precision and TDS who actually negotiated and entered into the agreement for TDS to perform

---

p.11 n.8 ("Dismissal of TDS' claims is appropriate under either Georgia or New York law . . . as New York law is substantially similar.").

its services. *See* [1], ¶¶ 14-16 (alleging that TDS's retention was authorized and approved by K&L and that TDS was instructed to send its invoices to K&L). The crux of this matter, therefore, turns not on an analysis of the elements of a traditional breach of contract claim, but instead on whether TDS has adequately pled that Precision acted as an agent of K&L when it contracted with TDS. *Carter v. Kim*, 277 S.E.2d 776, 776 (Ga. Ct. App. 1981).

### 1.    Georgia Law of Agency

TDS can state a claim for breach of contract against K&L only if it pleads facts showing that Precision had actual authority (express or implied), apparent authority, or ratified authority to bind K&L to the contract with TDS. O.C.G.A. § 10-6-1; *Stallings v. Sylvania Ford-Mercury, Inc.*, 544 S.E.2d 731, 733 (Ga. Ct. App. 2000) (the agency created under O.C.G.A. § 10-6-1 "would have to be express, implied, or ratified after the fact"); *Lynn v. Romar Marina Club, LLC*, No. 07-173-KD-C, 2009 WL 4667387, at *20 (S.D. Ala. Dec. 1, 2009) ("a principal is liable for the acts of its agent only if the agent acted with express actual

11

authority, implied actual authority, apparent authority or ratified authority.").

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act." RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006). To demonstrate that Precision had express actual authority, TDS must plead facts regarding a verbal or written agreement between K&L and TDS creating that express agency. *J'Carpc, LLC v. Wilkins*, 545 F. Supp. 2d 1330, 1337 (N.D. Ga. 2008) (express actual authority "arises in the situation where the principal expressly confers authority on the agent to act on its behalf"); *D.M.I. Dynamic Mgmt. Invs., B.V. v. Konvict Muzik, LLC*, No. 1:10-cv-3510-TWT, 2011 WL 2119131, at *2 (N.D. Ga. May 26, 2011) (to state a claim for express agency, plaintiff must identify agreement between principal and agent). Implied authority—not to be confused with apparent authority—is another form of actual authority that grants the agent the ability "to do acts that are incidental to [the express authority

conferred on the agent], usually accompany it, or are reasonably necessary to accomplish it." *Bd. of Trs. of City of Delray Beach Police & Firefighters Retirement Sys. v. Citigroup Global Mkts., Inc.*, 622 F.3d 1335, 1342-43 (11th Cir. 2010).

TDS could also plead the existence of apparent authority for Precision to bind K&L to the TDS contract. "Apparent authority is that which the principal's conduct leads a third party to reasonably believe the agent has; it creates an estoppel allowing third parties to bind a principal to the agent's acts *on account of the principal's conduct*, reasonably construed by third parties acting in innocent reliance thereon." *Gosule v. Bestco, Inc.*, 490 S.E.2d 532, 535 (Ga. Ct. App. 1997) (emphasis added). Whereas actual authority is created by the principal's representations to the agent, apparent authority is created by the principal's representations to third parties. *Alan, Sean & Koule, Inc. v. SV/CORSTA V*, 286 F. Supp. 2d 1367, 1374 (S.D. Ga. 2003) (citing RESTATEMENT (SECOND) OF AGENCY § 124A cmt. a (1992)). "Where there were no manifestations of authority by the principal to a

third party, apparent authority is not in issue." *Morris v. Williams*, 448
S.E.2d 267, 269 (Ga. Ct. App. 1994).

Finally, where a purported agent lacks actual or apparent
authority to do an act on behalf of a principal, an agency relationship
can nevertheless be created if the principal ratifies the act after the
fact, thereby giving effect to the act as though the agent had been acting
with actual authority. RESTATEMENT (THIRD) OF AGENCY § 4.01 (2006);
*Brock v. Yale Mortg. Corp.*, 700 S.E.2d 583, 588 (Ga. 2010) ("Ratification
occurs if a principal, with full knowledge of all the material facts,
accepts the benefits of an unauthorized act, or retains such benefits
after discovering the material facts." (internal punctuation omitted)).

### 2.    TDS's Agency Allegations

TDS has failed to plead facts demonstrating that Precision acted
with actual authority to bind K&L to the TDS contract. TDS makes no
reference to any agreement between K&L and Precision expressly
authorizing the latter to contract with TDS on behalf of the former. TDS
does aver that "[u]pon information and belief, [K&L] approved and
authorized Precision Discovery to retain TDS," but this is a mere legal

14

conclusion that, without supporting facts, is insufficient to state a claim

for an express agency. *D.M.I. Dynamic Mgmt. Invs., B.V. v. Konvict*

*Muzik, LLC*, No. 1:10-cv-3510-TWT, 2011 WL 2119131, at *2 (N.D. Ga.

May 26, 2011) (allegations that the agent "was acting . . . as the duly

authorized agent and representative of [the principal" and that the

agent acted "on behalf of" the principal were "merely legal conclusions"

insufficient to state a claim for agency where the plaintiff did not

otherwise offer facts to support those conclusions). Neither does the

complaint contain factual allegations giving rise to an inference that

Precision had implied actual authority to contract with TDS on behalf of

K&L.

TDS likewise fails to state a claim under a theory of apparent

authority because the complaint is devoid of allegations that K&L's

conduct—as opposed to Precision's—created the reasonable impression

that K&L intended to be bound by the contract with TDS. TDS avers

that it "was informed that [K&L] was aware and approved of TDS'

retention," but it was so informed by Precision, not K&L. [1], ¶ 14. In

any event, merely being aware and approving of Precision's retention of

TDS is not tantamount to any acknowledgment that it was the law firm, rather than Precision, that ultimately agreed to be the party to the contract and pay TDS's fees. The fact that TDS sent its invoices to K&L is insufficient to show an apparent agency, particularly in light of the undisputed fact that K&L "told TDS that one of the defendants [in the MDL action] was ultimately responsible for payment of TDS' invoices." [1], ¶ 25.

Finally, the complaint cannot reasonably be read to assert a claim that K&L ratified the contract. "As a general rule, the principal must intend to ratify the act in question in order to have an effective ratification." *MacDonald v. Harris*, 593 S.E.2d 32, 34 (Ga. Ct. App. 2003). When the principal relies on the act in issue when bringing or defending a lawsuit, that is "[o]ne of the most unequivocal methods of showing a ratification," but where, as here, the principal raises lack of ratification as a defense and there are not factual averments contradicting that defense, there is no claim for ratification. *Id.*

When the legal conclusions in the complaint are set aside, the remaining factual allegations do not give rise to an inference that

Precision acted as K&L's agent when it retained TDS. Because TDS's

breach of contract claim necessarily turns on the existence of an agency

relationship between Precision and K&L, that claim is subject to

dismissal.

### C.   Open Account and Account Stated Claims

TDS also brings claims against K&L for open account (count two)

and account stated (count three).

> A suit on open account is available as a simplified procedure
> to the provider of goods and services where the price of such
> goods or services has been agreed upon and "where it
> appears that the plaintiff has fully performed its part of the
> agreement and nothing remains to be done except for the
> other party to make payment."

*Five Star Steel Constr., Inc. v. Klockner Namasco Corp.*, 524 S.E.2d 783,

785 (1999) (quoting *Haas v. Jaffe*, 163 S.E. 226, 227(1932)). A claim for

open account is converted into an account stated if there is an

"agreement as to the amount and a . . . promise to pay" by the debtor.

*Kay Solar Systs., Inc. v. Rome Printing Co.*, 287 S.E.2d 675, 677 (Ga. Ct.

App. 1982); *City of Lawrenceville v. Ricoh Elecs., Inc.*, 174 F. App'x 491,

494 (11th Cir. 2006). These claims are inappropriate if there is any

"factual issue other than nonpayment" that requires resolution,

including disputes regarding "assent to the services, terms of the contract, what work was performed, the quality of the performance, or cost." *Five Star*, 524 S.E.2d at 785. An essential prerequisite to either claim is the existence of a debt incurred by the defendant. *Five Star*, 524 S.E.2d at 785; *Buffa v. Yellowbook Sales & Distributing Co.*, 760 S.E.2d 644, 646 (Ga. Ct. App. 2014); *Lawson v. O'Kelley*, 60 S.E.2d 380, 382 (Ga. Ct. App. 1950).

As discussed above, TDS has failed to show that it was K&L that incurred the debt at issue here, because it failed to plead facts suggesting that Precision had the authority to bind K&L to the contract with TDS. The Court disagrees with TDS's characterization that K&L has "belated[ly] attempt[ed] to create a dispute" regarding the facts relevant to these claims. It is undisputed that when TDS sent its invoices to K&L—as it had been instructed to do by Precision—the firm informed TDS that it was not responsible for payment, but that one of the defendants in the MDL action was. By TDS's own account, K&L has disclaimed responsibility for payment of TDS's fees since day one. For the same reasons that TDS fails to state a claim for breach of contract,

18

it similarly has failed to state a claim for open account or account
stated.

### D.   Quantum Meruit Claim

In order to recover under a theory of quantum meruit, a plaintiff
must show (1) that it performed services valuable to the defendant, (2)
either at the defendant's request or knowingly accepted by the
defendant, (3) that the failure to compensate the plaintiff would be
unjust, and (4) that the plaintiff expected compensation at the time it
rendered the services. *Mullinax v. United Marketing Group, LLC*, No.
1:10-cv-3585-JEC, 2011 WL 4085933, at *15 (N.D. Ga. Sept. 13, 2011)
(citing *Perry Golf Course Dev., LLC v. Housing Auth. of City of Atlanta*,
670 S.E.2d 171, 178 (Ga. Ct. App. 2008)).

Significantly, the plaintiff must have expected compensation *from
the defendant*, not third parties, at the time the services were rendered.
*Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1282 (11th
Cir. 2003) ("Since [the plaintiff] anticipated compensation from third
parties and not from [the defendant], [the plaintiff] cannot recover
under quantum meruit" against the defendant.); *Artrac Corp. v. Austin*

19

*Kelley Advertising, Inc.*, 399 S.E.2d 529, 534 (Ga. Ct. App. 1990)
("Austin Kelley's quantum meruit claim cannot survive against BEI and
Artrac II since Austin Kelley could not possibly have held an
expectation of compensation from BEI or Artrac II," when "the services
performed by Austin Kelley were for Artrac I."); *Synergy Worldwide,
Inc. v. Long, Haymes, Carr, Inc.*, 44 F. Supp. 2d 1348, 1358 (N.D. Ga.
1998) ("Because Synergy could not have reasonably expected
compensation from LHC, its claim of *quantum meruit* fails as a matter
of law.").

It is apparent that TDS anticipated that it would be compensated
when it performed its services in connection with the MDL action. But
neither the factual allegations in the complaint nor the reasonable
inferences to be drawn from them show that TDS could have reasonably
expected compensation from K&L, as opposed to a third party such as
Precision—by whom it was retained—or Delta—whom K&L told TDS
was responsible for payment of its fees. Although TDS now claims in its
brief that it believed Precision was acting as K&L's agent, it has failed
to adequately plead such a claim, as discussed above. Without factual,

non-conclusory averments demonstrating that TDS performed its
services for Precision while expecting payment from K&L, TDS's
complaint fails to state a claim for quantum meruit.

### E.    Unjust Enrichment Claim

"Under Georgia law, 'the theory of unjust enrichment applies
when there is no legal contract and when there has been a benefit
conferred which would result in an unjust enrichment unless
compensated.'" *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D.
Ga. 2012) (quoting *Smith v. Serv. Oil Co. v. Parker*, 549 S.E.2d 485, 487
(Ga. Ct. App. 2001)) (internal punctuation omitted). Unjust enrichment
is available only when there is no legal contract. *Id.* TDS's complaint
makes clear that the services it provided in connection with the MDL
action were provided pursuant to a contract, albeit not one with K&L,
as the Court found above. Although a party is permitted to plead
contract and unjust enrichment claims alternatively, when the unjust
enrichment claim itself incorporates allegations related to a contract, it
is due to be dismissed. *Am. Casual Dining, L.P. v. Moe's SW Grill,
L.L.C.*, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006); *Tidikis v. Network*

21

*for Med. Commc'ns & Research LLC*, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005).

Furthermore, a party can be unjustly enriched only when it receives a direct benefit from the services provided by the claimant. *Scott v. Mamari Corp.*, 530 S.E.2d 208, 212 (Ga. Ct. App. 2000) (unjust enrichment claim failed where the defendants did not "receive[] the direct benefit of [the plaintiff's] labor" and "any indirect benefit . . . was only the natural by-product of all work performed on the project). To the extent K&L received any benefit from TDS's services, the benefit was at most indirect or tangential. The direct benefit flowed to Precision and eventually to K&L's clients, the plaintiffs in the MDL action. Indeed, Delta was not required to pay the full amount of TDS's fees, and therefore this litigation arose, precisely because the Court found that the additional work performed by TDS was excessive and *not* beneficial to the e-discovery inquiry for which Precision was retained. The expanded scope of work was not TDS's fault, but the complaint fails to show that K&L was in any way unjustly enriched by the provision of TDS's services. *See Reidling v. Holcomb*, 483 S.E.2d 624, 626 (Ga. Ct.

App. 1997) ("Inherent in unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon them by another and failed to stop the act or to reject the benefit.").

**F.    Claim for Attorneys' Fees and Costs**

In count six of its complaint, TDS asks the Court to award it its attorneys' fees pursuant to O.C.G.A. § 13-6-11 because of K&L's alleged bad faith and stubborn litigiousness and because the law firm caused TDS unnecessary trouble and expense. [1], ¶ 73. Such a claim cannot stand on its own but requires that the claimant have a viable substantive claim for relief. *United Cos. Lending Corp. v. Peacock*, 475 S.E.2d 601, 602 (Ga. 1996) ("A prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim."). Because TDS fails to state any plausible claim against K&L, it is not entitled to recover its attorneys' fees or expenses of litigation pursuant to § 13-6-11.

## IV.   Conclusion

For the foregoing reasons, Defendant K&L's motion to dismiss [8]

is granted and this action is hereby dismissed with prejudice.[6] The

Clerk is directed to close this case.

IT IS SO ORDERED this 5th day of February, 2015.

Timothy C. Batten, Sr.
United States District Judge

---

[6] TDS has not requested leave to amend its complaint, and "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002); *Novoneuron, Inc. v. Addiction Research Institute, Inc.*, 326 F. App'x 505, 507 (11th Cir. 2009) ("Novoneuron had the benefit of counsel, but did not request leave to further amend its complaint. Instead, it filed a response to the Appellees' motion to dismiss. The district court was not obligated to *sua sponte* grant Novoneuron leave to amend.").